The first matter is State Farm. Mr. Herr. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, John Herr for the plaintiff, State Farm, in this insurance coverage declaratory judgment action. Your Honor, may I reserve two minutes for rebuttal? Of course. Thank you. The question in this case, as we see it, Your Honors, is whether a party can plead into insurance coverage merely by insured was intoxicated when he engaged in what can only fairly be described as a vicious and intentional assault. There is no reasonable way to look at the underlying complaint in this action and conclude that Dr. Mehlman's conduct in chasing Maria Iacono, jumping on her car, repeatedly aiming a .45 at her head, repeatedly pulling the trigger, fixing the misfire when that gun misfired three times, breaking through her car window, and shooting at her as she drives away as an accident. Would you agree? I'm sorry. I just had this question. Is the contention that a person, for example, might in effect be comatose and not even recognize what the person was doing? On the other hand, a person could be, the person could be doing what he or she is doing by reason of alcohol, which, you know, eliminates ordinary inhibitions. So I suppose if a person was like walking in his sleep, is there any allegation like that? There is not, Judge. And in our view, this is a critical distinction between the authorities that the District Court and the defendants here have relied upon in this case. You know, the universe of Pennsylvania cases, and by Pennsylvania cases, it simply means it was decided by Pennsylvania courts, not Eastern District case interpreting Pennsylvania law, are the Stidham and Hassinger cases, the only cases cited by anybody here from Pennsylvania. And in both of those cases, Judge, to answer your question, you had very specific and detailed allegations of a lack of conscious awareness. In this case, this gentleman was so intoxicated that he was in what was alleged to be an alcoholic stupor. When he, when he shot these folks, the allegations were he didn't even remember what he was doing. He had a history of these kind of, you know, alleged alcoholic blackouts, if you will. And so the allegations in that case were specifically that he lacked conscious awareness and was unable to formulate intent. In Hassinger, you had exactly the same allegation, and the Court makes that clear. What could, what could possibly support that allegation, other than a degree of intoxication? Because there's no other evidence, is there, in the case? In other words, we know how intoxicated the testing showed him to be, we know his level. Actually, I've seen much higher than that, to tell you the truth, in my career, but it was high. But is there any allegation that he was so intoxicated that he did not know what he was doing? And I mention that because what he was doing, I mean, required a certain amount of, you know, dexterity and skill. Amazing amount of dexterity, Judge. This was not some, you know, freak out where, God forbid, someone just assaults someone. You have all these bar fight cases, things like that. This is a prolonged, very vicious assault that took a lot of dexterity. Run, jump, chase, fix misfires, make sure the gun's shooting, go after her again. And there, to be fair, the allegation in the complaint, and there are no allegations at all with respect to lack of ability to formulate intent, lack of conscious awareness, there is a suggestion in here that he was cognitively impaired, whatever that means. And we know that under Pennsylvania law, cognitive impairment does not negate intent. And we've talked, and the District Court cited the Bomb Hammers case, where you had a raging, delusional, diagnosed schizophrenic who goes on a shooting spree. Well, here, don't you have, I mean, the man commits suicide, so obviously there's something badly amiss with his mental state. And you have on top of that, the very high degree of intoxication. If we're looking at this in the light that the District Court did, and trying to see whether there's a problem or issue of fact that needs yet to be resolved, how can we say that a suicidal, highly intoxicated person is more in control than somebody who claims to have blacked out later, as was the case in Stidham? Well, understood, Judge. And that's why we're sort of limited here. We have to look solely at the allegations in the complaint. And, you know, with respect, Judge, I guess we could differ about whether the actions undeniably exhibited by this man demonstrate high intoxication. You know, to the extent that that's a fact question, fair enough. But we have to look at the allegations in this complaint, and they do not measure up to anything that any Pennsylvania court has ever said is sufficient to negate intent. You simply can't say that by alleging intoxication, and, you know, Judge, this is a double-edged sword. I mean, you know, there is clearly an attempt here to plead insurance coverage. They're trying to get within this policy, and having set about to undertake that task, there are standards for that. And the standards are, you have got to say something about this man's ability to formulate intent. Since we're focused on the allegations in the complaint, you know, if... As you put it, to plead into coverage, a plaintiff would have to say something like, the assailant was incapable of forming intent because they were so intoxicated. They would have to be sort of, in those words, or something like that. Well, Judge, I mean, Stidham used different language, Hassinger used different language, but there's got to be some... Because this is about fact pleading. You know, they have to plead as a fact, not only that he was drunk or somewhat cognitively impaired, but he couldn't formulate intent. When everything else in that complaint suggests this was intentional, they start off by alleging intentional infliction of... I'm sorry. Doesn't he have to intend the specific harm that results? For an intentional act exclusion, absolutely, Judge. That is true. He cannot merely intend his actions. He's got to intend the harm for an intentional acts exclusion. So how far does that logic reach? Does he... Does there have to be proof that, you know, he wasn't just trying to kill her, he was trying to scare her so bad that she'd be emotionally crippled the rest of her life? I don't think so, Judge. I don't think you'd have to plead that level of specificity, but to... You know, the cases have been out there. You know, Stidham was decided more than two decades ago. The case law is very clear about what you have to plead, I think. And so you have to plead an inability to formulate intent. And then, you know, I suppose through discovery and things, if you want to say there's a fact question, then you talk about what his intent actually was. But... I think State Farm, in that case, would probably say there was coverage. You'd have a drunken... I mean, State Farm defends drunken drivers. Absolutely, Judge. And the only Third Circuit cases of relevance here are cases like that, where there's no indication... You know, it's the cop, the police officer, who shoots at a car and ends up hitting the driver and killing him. This is the Titan Indemnity case, but says, you know, I intended to shoot the car to stop it. I wasn't trying to kill the person. There's a distinction that what he did here was sort of an inherent tort. The conduct was inherently tortious, whereas driving down a road in a car is not in itself inherently tortious. It's how you do it that makes it a tort. I think that's right, Judge. I mean, I think if you look at the allegations in the complaint, there's no reasonable way, and that's what we're trying to assess, what could potentially come within the coverage of this complaint. There's no reasonable way to say what he did was an accident. I think at the end of the day, that's right. I mean, it comes down to that. You can't say that what he did here was an accident. And so, you know, to the extent that someone's driving down a road drunk and having just been through this traumatic situation and, you know, injures somebody, that's right. I think you err on the side of the insured in that case. And there are cases like that. The Third Circuit cases are relevant. Even where you have cases, the Cameron case, the Third Circuit case, where, you know, there's a bar fight and there's a question about this gun goes off, and there's a question about whether it was a, you know, the guys were joking around or whether it was intentional. In a case like that, where there's a reasonable allegation that it might be an accident, I think that's right. You've got to err on the side until discovery can flesh out what happened. There is no reasonable interpretation of repeatedly pointing a gun at someone's head, pulling the trigger. You know, I don't want to be redundant, but it's just our view that… You've got to help me with that at least. I don't want to speak for anybody else. You're making a distinction here, and there may very well be one, but run through it with me again. Instead of you have what would look on the surface to be pretty aggressive, intentional assaultive behavior, same sort of thing you've got going here, in that case, you know, the Pennsylvania courts say, well, he's so intoxicated, he couldn't have formed the intent. Here, we've got a guy who, after the fact, and it's not an exact science, but he's still putting the needle on the drunk scale, banging in the red zone. How do you make the distinction between the two? We think there are two very critical distinctions, Judge, between Stidham and this case. The first, as I mentioned, is the allegations, and we are bound by those. I mean, this is plaintiff's burden to prove that this is an accident. This is a grant of coverage. It's not an exclusion. So it's their burden to demonstrate coverage under this policy, and you do that through the allegations and the complaint. Stidham tells you what the allegations are that will get you past this type of defense. The second critical distinction in Stidham is that it was interpreting an intentional acts exclusion. This is interpreting the definition of accident. Accident's a grant of coverage. An exclusion, intentional act exclusion, have been for more than 10 years now been deemed ambiguous as a matter of law in Pennsylvania. So since that's an exclusion, a burden is on the insurer to demonstrate. So any reasonable doubt, if you will, Judge, has to go against the insurer in that case. Not true with a grant of coverage. It's their obligation to meet the pleading standard, because that's how we determine if there's coverage. So you have totally different allegations, and you have the Stidham court construing a policy provision that has been deemed ambiguous as a matter of law. Every court that's ever considered the definition of accident has said that it is very clear it's a mishap. It's a... Turn, if you would, for just a second to the homeowner's policy. There's the argument that the other side has made that I'd like to hear your response to, that if there's a, that there are physical injuries here. She hit, you know, she ran the car into a tree, she's badly injured in that respect, and that they mentioned those in the complaint, and that's enough to overcome your argument that this is just a disconnected emotional injury. What's your response? Well, the response, Judge, is again, you know, we have to focus on what the complaint actually says. Discovery, they certainly said that she was injured when she ran into that tree. Complaint never says that, never says anything close. It says she crashed into a tree. And when you look at every allegation of physical trauma, physical pain in here, it follows and is made in conjunction with allegations of emotional harm, and it repeatedly, I think on six or eight occasions, calls these physical injuries, physical manifestations of the emotional harm. The only physical... I'm sorry? I'm sorry. Doesn't it say permanent emotional and physical damage in the complaint? I'm sorry, Judge, could you just tell me what paragraph you're reading? I think paragraph 43. Yeah. Judge, there is no doubt that they refer to those things, but it always... And I'm sorry, and emotional and physical trauma on paragraph 36. Yeah. If you look at the structure of this complaint, everything that this gentleman did to cause this harm is associated with fear and anxiety and the things that flowed from that. They say that, and then if you look for every specific physical injury identified, gastrointestinal injuries, bowel and bladder dysfunction, headaches, et cetera, they all are alleged to come from fear. There are four counts against the estate of Dr. Melman here. Two are intentional and negligent infliction of emotional distress, clearly emotional injuries. Negligence. The allegation of negligence is interesting. They say that he had a duty not to inflict bodily injury, and they say he breached that duty not by shooting or hitting her, and they specifically say he never did that. He never shot her. The allegation is that he breached his duty in negligence law by placing her in fear, by pointing a gun at her and pulling the trigger. These are emotional injuries that led to physical injuries. The allegations are that she's over... How long is his reading? I forgot. Is it blood alcohol reading? 0.21. What was it? 0.21. You know, when I was first admitted to the bar, I was in drug and driving cases, and 1.5 was the cutoff. You know, a shade less than 1.5, you might even consider intoxicated. I don't know why it's intoxicated now, but it wasn't then. And to just address that point, Judge, we've relied heavily on the Commonwealth v. Martin case. This seems to be the delineation in Pennsylvania law. You have Stidham on one hand and the Martin line of cases on the other hand. In Martin, you have a case where a gentleman deliberately drives his truck into his ex-wife, injures her and her property. Unlike Stidham and Hassinger, that court looked at the definition of accident, and that gentleman was alleged to be 0.26. So the ex-wife, of course, pleads that he's intoxicated to get around the accident. He also told the police that he intentionally... he intended to hit her. Is that right? It is, and the district court... the state trial judge found that, and the superior court reversed and said it doesn't matter. That allegation of intoxication could not overcome intent, even though his allegation, the intoxication in that case, was much higher than it was here, addressing exactly the same exclusion that we have at issue here, unlike Stidham. And that court said, and it said, while intoxication may prevent premeditation, quote, it will not prevent the formulation of the general intent necessary for the commission of an assault and battery. But there seems to be tension between Martin and Stidham on this whole matter. I understood, Judge. I would just respectfully submit that there's not. If you look at... that's why we have to focus on the allegations in the complaint. Good. We'll have you back on rebuttal. Thank you, Your Honor. Mr. Messin. Good morning. Yes, good morning, Your Honors. May it please the court, Joe Messin on behalf of the appellee cross-appellant, Maria Iacono, there's two minutes reserved for Mr. Lovett, co-counsel. Good. I will start with the issue with respect to the homeowner's complaint, since the appellee agrees with the district court decision as to the other aspects of the coverage issue, the limited issue of the homeowner's policy. We believe coverage should appropriately be provided as a consequence of the fact that the district court misinterpreted the complaint as alleging only emotional injuries. And as the court has touched on, I'll point out some others. Throughout the complaint, there are pleadings and claims of physical injury and physical trauma in paragraph 36, physical trauma, paragraph... Is it enough the way you've alleged it? I mean, I understand their assertion to be all the complaint specificity is directed at emotional trauma. And then in a couple of places there's a catch-all assertion that she suffered physical trauma as well. But there's no way to say that the trauma was different or separate or other than a manifestation of physical symptoms flowing from the emotional distress. And therefore, they've only alleged a freestanding emotional distress. Can you point us to language for a complaint where you're saying she hit the tree and that resulted in these injuries and therefore, et cetera? Well, Your Honor, as you're aware, the complaint incorporates, as we go through, the facts to each count. But certainly, the allegation of, in addition to the attempts to chase her and shoot at her, the fact that she crashes her car into a tree as part of this entire altercation is a physical impact. And that's set forth in paragraph 31 of the complaint. But their assertion is you haven't said anything about injury from that. That's what I'm trying to get you to respond to. Yes, Your Honor. I read the complaint, and I know you talk about her hitting the tree. Their argument is they're asking you to assume, to make some inference that because she hit a tree with the car, she must have been injured from that. And that's what they must have been talking about when they later say physical trauma, even though that physical trauma assertion follows immediately after talking about the emotional distress. Why are they wrong? Because it's not included as part of the allegation of emotional injury. If you read through the complaint, there are separate and distinct allegations of physical injury in paragraphs 36, 43, 45, 82, 86, 88, throughout the complaint where there are allegations of physical injury and of emotional injury, but certainly not within the context that it's been argued that those physical injuries are only as a consequence of the emotional injury. There are specific allegations, and I think, as Your Honor, Judge Sirica pointed out in paragraph 43. In paragraph 45, there's a claim of suffered physical damage. Paragraph 36, physical trauma. Paragraph 86, physical pain. Paragraph 88, that the plaintiff suffered physical damage, and those allegations are separate and apart from the psychological or emotional aspect of the injury. Perhaps not as clear as it may have been, but certainly with the construction of pleading in this context, that as this Court's previously held in Frog Switch Manufacturing v. Travelers, that those factual allegations of the complaint are to be liberally construed in favor of the insured or coverage, which would be the case here. Well, I'm sorry. I was just going to press you for one more second. Yes, Your Honor. Can you point to it? I've looked at those specific paragraphs in the complaint, and just taken as an example, 36. Yes, Your Honor. This is following her abrupt encounter with the tree, and she's able to get the car going. She drives out at all times relevant here to plaintiff, feared for her life and well-being, and was caused tremendous emotional and physical trauma as a result of Dr. Mellon's negligent and intentional actions. How does the physical trauma tie to some physical injury other than, and it may be sufficient, but I just want to make sure I understand, am I correct in understanding that you're saying, well, we said physical trauma here, and therefore, because you have to liberally construe this, you've got to read that to mean there was physical injury from the car hitting the tree. That's what it means. And candidly, Your Honor, it may not be as clear as it could or should have been in the pleading. However, the allegation of the physical trauma with the tree, the car crash into the tree as a consequence of these actions, and the allegation of physical injury flowing from that is throughout the complaint. For example, if you go to, we can specifically talk about the negligence count. You don't need to. I just need to know, have I got your legal position? Yes, Your Honor. That wherever it says physical trauma, you're talking about she hit a tree. She hit a tree and suffered injury as a consequence of that. And unfortunately, we don't have all the factual discovery as part of this, but clearly there is a physical injury that's separate and apart from the psychological. I have a question on this. Yes, Your Honor. Excuse me. Is the causal connection, assuming on the last point, is the causal relationship sufficiently alleged in that sense? I believe it is, Your Honor, to the extent that the allegation as a consequence of Dr. Melman's actions and her attempt to escape or flee, she crashed into the tree in the factual section of the complaint, and then subsequently in the specific counts, including the count for negligence, there's an allegation that the negligent and careless conduct of the defendant, Dr. Melman, caused her physical pain and physical injury and physical harm in conjunction with, I mean, I think that alone gets there, even though it may not be as clearly pled as possible, but that in conjunction with the manner in which this Court's previously said, and in many courts the complaints are to be construed in favor of the insured, I believe that gets us there. Thank you. Yes, Your Honor. I just have this question about the structure of these proceedings. There's an underlying lawsuit that's pending, right? Yes, Your Honor. And that's what is at stake? There was a trial scheduled in April, and at the first day of trial the Court stated pending this Court's decision, we don't have a lot of rationale for that other than perhaps the trial court believed there was a better chance you could get the case settled and not have to go through a two-week trial. But that case is being held right now. It's being held by the trial court pending this Court's decision on coverage. The judge in this case held that the homeowner's policy did not obligate State Farm to defend. Yes, Your Honor. But the judge also held that it wasn't really final that State Farm did have a duty to defend under the umbrella policy, and then to quote the words, quote, at least until such time as the factual record can show that Dr. Nolman's purported state of intoxication did not negate any intent on his part. Now, I guess that the judge thought that I'm not sure quite what that means. Who would have the burden on that to show that it did not show intent on his part? I don't know why did not negate intent on his part. In other words, the assumption would be the way the judge looked at it was certainly he intended this, and somebody would have to show it did not negate that intent. So I guess that the – who has a burden on that? I guess you do. Well, certainly, Your Honor, as Your Honor is well aware, the issue at this point is coverage, and I think that's what the – But where would this be decided? In other words, at what point in what trial would that be decided? At trial, as the cases have indicated, the issue of intoxication or an imbibed participant, whether that participant's actions and intoxication were sufficient to take away intent or negate intent is an issue of fact for the jury to determine. Once the intent is negated, there's coverage. What would you do? Put a question to the jury, a specific question? In other words, would it be an interrogatory on a question to the jury? Sometimes you can get a general verdict. How would this be done? I would believe, Your Honor, that that issue or that question would have to be submitted to the jury at the trial court level, the issue of intent and whether or not the intoxication negated that intent. And certainly that's what I believe the list of cases like the Stidham case and cases that have been decided previously in this jurisdiction in the district court have indicated the effect of insurer's intoxication must be considered by the fact finder, and that question of fact turns on credibility. So that's an issue that should be and will be decided in trial court. But see, the thing is that the plaintiff, even if there's no coverage, has a right to proceed with the suit. So in other words, the plaintiff could still, at that trial, get a verdict against the defendant even though there was no coverage so that the verdict might not be collectible. I don't know. I was a state trial judge once. I had a case. I'll never forget it. There were two theories. One, there was coverage. One, there wasn't. And I said to the defense attorneys or to attorneys, you're not going to both defend the case. And they stipulated that the insurance company attorney would defend the whole thing even though the verdict for the plaintiff on the non-coverage point would exonerate its client. And he went all out completely and got a no cause all around. I'll never forget that. So, I mean, I'm just trying to figure out how would you try this case? Well, Your Honor, there is certainly. Because there's clearly liability. There is certainly liability against this defendant. There is counsel who has been defending this case from the beginning, who's appointed by State Farm to defend this case on a reservation of rights, as you see in most of these cases. And as Your Honor has pointed out, that's an issue which I believe would have to be addressed in the trial court as the legion of cases have asserted, that that issue of whether this person's intoxication clearly at .21, although, Your Honor, I don't remember the time that .15 was not intoxicated, but I do remember when .10 was not intoxicated. But .21 is almost three times the current legal level of intoxication. The defense attorney is in a funny spot because the insurance company engaged him and the defense attorney ought to want a verdict as far as the insurance company is concerned. I know he can't do this, but his client, if it's the insurance company, is better off if the jury finds, in effect, that the intoxication didn't cause this. And therefore, the defendant may be liable as could be, but my carrier isn't. I mean, that's funny. Sure. Clearly at this point, Your Honor, or at least where the current proceedings stand, there is a duty to defend on State Farm, and that issue of intoxication would be submitted, depending on where we come back from, this issue of coverage by the trial court. Let me ask a question. In the interest that the client lose, provided the client loses in the right way. Well, with respect to that issue of intoxication, although I do believe that the counsel appointed by State Farm has a duty to defend the client and not the carrier. I agree. I think there's a lot of cases on that. But it is funny, though. Yes, Your Honor. Not that much humor in this case. If the Chief Judge will indulge me, I do have a couple questions. Yes, Your Honor. Your argument appears to assume that the universe of human behavior divides into two and only two categories, and that they're mutually exclusive. One is intentional conduct, and the other is accidental conduct. And therefore, if intent is negated by intoxication, ipso facto, we are in the realm of the accidental. And I'm wondering if you've got some authority for that, which seems to be an underlying presumption or premise in your argument. Maybe I've misunderstood your argument. I'm not sure I understand Your Honor's question. If I have an underlying... Is there some case, in other words, it occurs to me that it's possible that the universe of human behavior has more than those two things in it. Yes, Your Honor. And that, indeed, if the term accident means, as the Pennsylvania law seems to say it means, something that has an element of fortuity to it, that you could say a lot of things about Dr. Melman's behavior and the events on that day, but that they were an accident seems, in ordinary parlance, a bit of a stretch. You know, an accident is when you trip, or when you're not looking and you bump into the stop sign. Not that I've ever done that. But it's not, I chase you with a gun, fire three times despite it misfiring, and attempt to kill you repeatedly. That's not what ordinary people think of as an accident. I think Your Honor... It couldn't have been intentional. And the only other kinds of things in the world to describe human behavior when they're not intentional are accidents. So that's maybe not artfully formed, but that's my question. Do you have authority for the proposition that if not intentional, therefore accidental, is the law? I think there are a couple of responses to your question, Your Honor, that I would submit. Number one, we know for a fact that Ms. Iacono was not someone who Mr. Melman had a significant relationship with, was not really a target, so to speak, the person she was who happened to be in the wrong place at the wrong time. And certainly we're inferring all kinds of facts. Martin says you don't look at this from the victim's perspective. I mean, it's pretty clear on that, right? I agree, Your Honor. Okay. So that doesn't seem to carry much weight. I mean, it may have been a real bad piece of luck for her to be where she was when she was, but your take on that seems contrary to Martin. I agree, Your Honor. I apologize. I was trying to get through the point, which is we are assuming by virtue of how we view this kind of conduct socially that it must have been something horrific, intentional, et cetera. One, there's the issue of intoxication that we've already talked about, but we don't know what this man's intent, if any, was, even if we put intoxication aside for a moment, whether his intent was to scare her, to find his girlfriend who he was on the outs with, Ms. Satter, who wasn't home. Certainly, guns accidentally misfire, accidentally discharge. Certainly, she was not shot. Well, you're not suggesting that his pointing the gun at her was an accident. I mean, in this course of events, whatever was in his mind, whether he meant to kill her or not, it was some kind of intent was going on there, whether it's legally the kind that would pull him in or out of coverage is a different issue. Yes, Your Honor. Is that fortuitous conduct that he, I mean, or is it, it appears to be motivated behavior, not accidental behavior. Well, if we put aside intoxication, how motivated by what is unclear, given, obviously, his underlying mental state, but he clearly was in an agitated state. I mean, it's pled in the complaint, and I think the facts support it, that he was sort of irrational in an agitated state, and we don't know what happened with this gun, whether that was accidental or otherwise. In addition to that, I would point out, Your Honor, that, and Your Honor has referenced the court's evaluations of the term accident, but State Farm doesn't define accident. There are references to occurrence, accident does this fall under that definition, and the fact that they don't define it, I think, under the construction principles, makes it such that it should be more broadly defined in terms of coverage, and secondly, State Farm, in their briefs, takes the position that accident is defined as in Black's Law Dictionary, which is unexpected occurrence to the victim, as opposed to the actor, which here, certainly, according to their argument, that Black's Law Dictionary definition of accident applies, it would come under the unexpected to her. We couldn't accept an incorrect statement of law from them any more than we could from you. If Martin says you can't look at it from the victim's perspective, we can't look at it from the victim's perspective, right? Yes, Your Honor, I agree. Okay. But there's still the issue of definition of accident or occurrence in terms of the policy. Thank you. Thank you. Good. Mr. Mesa, thank you very much. Thank you, Your Honor. Mr. Herrick? Oh, I'm sorry, you're right. Mr. Lovett. May it please the Court, Mark Lovett for the estate of Thomas Mellman. I only want to address one issue, if I could. With regard, the estate has an expectation of being defended in this case. The estate, what? I'm sorry. The estate. Looking at the complaint and with regard to your questions about the allegations of physical injury, I think sequentially, the way it's alleged, it does bring coverage for physical damage.  Paragraph 36, it's all inclusive language. As a result of Dr. Mellman's negligent and intentional actions, there was tremendous physical trauma. We know that trauma is defined as produced by sudden physical injury. And under a duty, when we're examining a duty to defend, we have to look at the allegations of the complaint. We have to look at what they reasonably can infer. And when you have words such as that, trauma related to all of the actions, I think it's been brought within the language of the homeowner's policy. Thank you. Any questions? Thank you, Mr. Lovett. Mr. Hare. Very briefly, Your Honors, and the course won't be redundant. The claim, Your Honors, and I submit that it's more clear here than it is in the complaint, but that the physical injury stemmed from the crash into the tree. I just don't think that's a fair interpretation of the complaint. If you look at what it says, the only physical injuries listed here, and I won't read them again, but they are very clearly specified. The physical injuries in this case are very clearly specified, all called physical manifestations of emotional harm. The complaint is very clear on that. I'd submit. Well, we're talking past each other, it sounds like, because it doesn't say in paragraph 36, physical manifestations of emotional harm. It says just what you heard quoted. Three paragraphs earlier it says the car goes into a tree, and then it says as a result of Dr. Mellman's negligent intentional actions, she suffered physical trauma. Why are they wrong when they say that's enough under a liberal standard to show there's a duty to defend here? Well, Judge, I think you have to look at the complaint as a whole. And so when they further define physical trauma and physical injury, they specify what they are. Where do they do that? Where do they do that? Show me where in this complaint they say physical trauma means manifestations of physical injury associated with the emotional dysfunction. Yeah, I unfortunately don't have a complaint in front of me, Judge, but there's about eight occasions where they specifically, the only physical injuries are called headaches, gastrointestinal injuries, bladder-bladder dysfunction, those things. They do specify what the physical injuries are. They give examples, but do they, is there a, you say they define it. You can, okay. They list, I understand what you're saying, Judge. I mean, you know, just to say that it's physical injury or physical trauma when that term is always used after and in conjunction with emotional harm in a complaint that pleads that every action was intended to cause fear and anxiety, I don't think that it's just a fair interpretation to say that they're alleging separate and distinct physical injuries here. That term never appears unless it's after and in conjunction with emotional harm. Yeah. I'll give you 30 seconds. Oh, thank you, Your Honor. With respect to Judge Jordan's point that negating intent, even if intoxication does that and we don't think it does, that does not make an accident, it does not make intentional conduct an accident. Things could be malicious, for instance. At a minimum, what Dr. Melman did here was malicious. It's not fortuitous. It's not a mishap. So even if you get past intoxication, Your Honors, we don't think this was an accident. Trauma, to get back to the point, they say it solely means physical injury. That's just not true. Plaintiffs themselves call trauma. We understand your point. Understood. Thank you, Your Honors. Good. Thank you very much, Mr. Hare. The case was well argued. We will take the matter under advisement.